COURTNEY v. CROXTON et al.

In re HURON IRON MINING CO.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1917.)

No. 2931.

1. COURTS ⬥365—RULES OF DECISION—STATE DECISION—LIABILITY OF CORPORATE STOCKHOLDERS.

The liability of the stockholders of a Minnesota corporation for the difference between the par value of the stock issued to them as full paid and the amount they paid therefor, even if not controlled by statute, is a question of local law, on which the decisions of the courts of that state are controlling.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ⬥365.]

2. BANKRUPTCY ⬥145(2)—RIGHTS OF TRUSTEE—STOCKHOLDER'S LIABILITY.

Under the decisions of Minnesota, a stockholder, to whom a corporation has issued full-paid stock on payment of an agreed price less than the par value, is liable for the balance of the par value only to creditors of the corporation, who have given credit to the corporation on the faith of its capital stock, notwithstanding the provisions of Gen. St. Minn. 1913, § 6193, that no corporation shall issue any stock for a less amount to be actually paid in than the par value of those first issued, and such liability cannot be enforced by the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 205; Dec. Dig. ⬥145(2).]

3. COURTS ⬥96(1)—COMITY—DECISIONS OF COURT CIRCUITS.

The decision of the Circuit Court of Appeals of another circuit that the trustee in bankruptcy of a corporation could not enforce the liability of a stockholder for the difference between the par value of his stock and the amount paid for it, which the Supreme Court refused to review on certiorari, will by comity be followed in the bankruptcy proceedings in determining the claims of some of the stockholders, including the defendant in the other suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 327, 334; Dec. Dig. ⬥96(1).]

4. BANKRUPTCY ⬥345—CLAIMS—PRIORITY—STOCKHOLDERS.

The claims of solvent stockholders of a bankrupt corporation, who are liable for the difference between the amount paid for the stock and the par value only to defrauded creditors, will not be postponed in the bankruptcy proceedings to the payment of other claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. ⬥345.]

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

In the matter of the Huron Iron Mining Company, bankrupt. Claim by S. W. Croxton and others against Joseph S. Courtney, as trustee in bankruptcy. From an order allowing the claims, without deduction for indebtedness of the claimant to the bankrupt, the trustee appeals. Affirmed.

J. E. Tracy, of Marquette, Mich., for appellant.

H. B. McGraw, of Cleveland, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge.   Appeal from an order allowing claims of stockholder creditors.   The Huron Iron Mining Company was incorporated in 1906, under the laws of Minnesota, with a nominal capital stock of $1,500,000, consisting of 15,000 shares, of $100 each.   Each of the claimants became a stockholder, and each paid for his stock $10 per share (10 per cent. of its par value), and by express agreement with the corporation received certificates of "full-paid and nonassessable" stock.   The corporation later, being in need of money, attempted to borrow $75,000, and asked its stockholders to contribute to the loan in ratable proportions.   Each of the claimants furnished his pro rata share of the loan, aggregating $39,000.   To secure the loan the corporation gave a mortgage, on April 17, 1913 (due on or before one year), upon its mining lease, which was its only asset of substantial value. Upon its voluntary petition, the mining company was adjudged bankrupt December 19, 1913, by the District Court for the Western District of Michigan.   Its mortgaged leasehold was later forfeited by the lessor for nonpayment of royalties and ground rent, and the mortgage security thus entirely failed.   Uncontested claims were proved amounting to nearly $70,000.   On these claims dividends amounting to 40 per cent. have been paid.   The assets being manifestly insufficient to pay even the uncontested claims, the referee in bankruptcy ordered an assessment of $3 per share upon all outstanding stock in the mining company.   With the exception of Georger, each of the claimants voluntarily paid his assessment to the trustee in bankruptcy.

In a suit brought by that trustee against Georger in the District Court for the Southern District of New York, to recover the assessment made against him, judgment was entered for defendant, and this judgment was affirmed by the Circuit Court of Appeals for the Second Circuit, upon the ground that the liability for the unpaid purchase price belonged, not to the corporation, but to its creditors, and that the trustee in bankruptcy had no authority to collect the same. Courtney v. Georger, 228 Fed. 859, 143 C. C. A. 257.   After the judgment in the Georger Case, and before its affirmance by the Circuit Court of Appeals, the referee made an order allowing the claim of each of the claimants on account of the loan so made to the corporation in 1913.   The order, however, provided that claimants be not allowed to share in any dividends until all other creditors should have been paid in full, and that no claimant be allowed to share in any dividends, derived from the stock assessments, nor to share in any dividends whatever until he himself should have paid all lawful assessments against his stock which might be ordered by the bankruptcy court; further assessments evidently being thought necessary.   To provide for dividends to claimants when they should become entitled thereto, a fund of upwards of $5,000 was impounded in the hands of the trustee in bankruptcy.   On review of the referee's order, the District Judge accepted the reasoning and conclusion of the Circuit Court of Appeals in the Georger Case, and affirmed the referee's order so far as it allowed the claims in question, and reversed it as to the provisions declaring claimants to be indebted to the corporation for the

unpaid portion of their stock and postponing the payment of their claims.

[1] The broad and meritorious question is whether the bankruptcy court had jurisdiction to make the assessments in question upon the stockholders of the bankrupt corporation, and, through its trustee in bankruptcy, authority to enforce the collection of such assessments. The answer to this question depends primarily upon whether the liability in question is a corporate asset or belongs to creditors only; and in determining this question we must look to the laws of Minnesota, including pertinent rules of decision as announced by the Supreme Court of that state. Converse v. Hamilton, 224 U. S. 243, 253, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Kiskadden v. Steinle (C. C. A. 6) 203 Fed. 375, 378, 121 C. C. A. 559; In re Jassoy Co. (C. C. A. 2) 178 Fed. 515, 101 C. C. A. 641.

[2] The statutes of Minnesota (G. S. 1913, § 6645 and following) contain elaborate provisions for enforcing the liability of corporate stockholders, through assessments made by the courts of Minnesota upon petition of corporate creditors, assignee or receiver. The Supreme Court of that state has held that the receiver of a corporation can recover *as assets of the corporation* only "what is or was at some previous time, and still is, as to creditors, the property or estate of the corporation"—as property conveyed in fraud of creditors or capital refunded without consideration to stockholders, or the right to recover the balance due on a subscription for stock. Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 444, 69 N. W. 331, 38 L. R. A. 415; Minnesota Thresher Mfg. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310; Basting v. Ankeny, 64 Minn. 133, 66 N. W. 266. And it is settled that the double liability of stockholders under section 3 of article 10 of the Constitution of Minnesota is not to the corporation, but to the creditors collectively, and that the mode and means of the enforcement of such liability are subject to the regulations imposed by the Minnesota statutes. Converse v. Hamilton, supra, and cases cited at 224 U. S. 253, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292.[1]

It has been authoritatively decided that the Minnesota statute confers upon the receiver appointed under creditors' petition the authority, as quasi assignee and representative of the creditors, to maintain an action in other jurisdictions for the collection of the assessments ordered. Bernheimer v. Converse, 206 U. S. 516, 534, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, supra, at 224 U. S. 258, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292. It is also authoritatively settled that bankruptcy proceedings against a Minnesota corporation do not stand in the way of resorting to the statutory method of enforcing double liability of the stockholders under the Minnesota statute, and for the reason that such liability is not a cor-

[1] We have held, following the decisions of the Court of Appeals of Kentucky, that the stockholders' double liability imposed by the statute of that state is not an asset of the corporation, and that the right of action therefor is in the creditors. Alsop v. Conway, 188 Fed. 568, 573, 110 C. C. A. 366.

porate asset. Selig v. Hamilton, 234 U. S. 652, 661, 34 Sup. Ct. 926, 58 L. Ed. 1518.

Unless, then, the liability of petitioners and the other stockholders of the bankrupt corporation to assessment on account of the unpaid purchase price of their stock, to the extent necessary to meet the claims of creditors, differs in its nature from the double liability imposed by the Constitution of Minnesota, in that it is an asset of the corporation itself, it is clear that the Georger Case was rightly decided. Section 6193 of the Minnesota Statutes provides that:

"Save as otherwise specially limited or provided, no corporation shall issue any share of stock for a less amount to be actually paid in than the par value of those first issued."

The so-called "trust fund" doctrine was at an early date rejected by the Supreme Court of Minnesota, and the right of creditors to compel the holders of unpaid-for stock to pay for it, contrary to their actual agreement with the corporation, held to rest only on the ground of fraud, viz. in misrepresentation as to the actual amount of the corporate capital on the faith of which persons have dealt with the corporation and given it credit. In such case the corporation is held never to have had any cause of action against the stockholder, and as between the latter and the corporation, the agreement for the issue of the stock at less than its value was held valid. Therefore equity will enforce payment for such stock in favor of those creditors, and those only, who have relied on or can fairly be presumed to have relied on, the stock's representing actual capital; and in enforcing this principle it makes "no difference whether the stock issued as paid up is bonus stock, pure and simple, or whether it was sold for cash for less than its par value, or for property at a gross overvaluation." Hastings Malting Co. v. Iron Range Brewing Co., 65 Minn. 28, 33, 67 N. W. 652; Hospes v. Northwestern Mfg. & Car Co., 48 Minn. 174, 192, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637, and following; Northwestern Railroader v. Prior, 68 Minn. 95, 98, 70 N. W. 869; Wallace v. Carpenter, etc., Co., 70 Minn. 321, 327, 73 N. W. 189, 68 Am. St. Rep. 530, and following.[2]

The trustee in bankruptcy contends, however, that the liability of the stockholder claimants in the instant case was not created by statute, but depends upon the principles of general law, and that therefore the decisions of the Minnesota courts are not controlling. True, the opinions in the cases just cited have not usually referred to the statutes or Constitution as involved; but the equivalent of so much of section 6193 as we have quoted herein seems to have existed and to have been applicable to the situation, and it is to be presumed that the courts, in determining the questions involved, were not unmindful of it. Indeed, in the Hospes Case, 48 Minn. 196, 50 N. W. 1120 (15 L. R.

[2] There seems to be a presumption (rebuttable, however) that the creditor relied upon the subscription and the representation that the stock was fully paid. Hospes v. Northwestern Co., supra, 48 Minn. 197, 50 Minn. 1121 (15 L. R. A. 470, 31 Am. St. Rep. 637); Randall Printing Co. v. Sanitas Mineral Water Co., 120 Minn. 268, 274, 139 N. W. 606, 43 L. R. A. (N. S.) 706.

A. 470, 31 Am. St. Rep. 637), the court referred to the law of 1873 (which has apparently the substance of the clause of section 6193 which we have quoted) as not of itself "sufficient to create an implied contract, contrary to the actual one, that the holder should pay for his stock"; and in Wallace v. Carpenter Co., supra, a different statute was construed as forbidding the issue of corporate stock "as fully paid for when such was not the fact." But if Randall Co. v. Sanitas Co., supra, is to be accepted as an adjudication that the doctrine of the Hospes and other cases cited did not involve a construction of statute or Constitution, it yet remains that the corporation in question is the creature of the Minnesota statute alone, and thus the question whether the stockholders therein are liable for the unpaid part of their stock is a local question, involving the public policy of the state, and so is governed by the pertinent rule of decision of the Supreme Court of Minnesota. Kiskadden v. Steinle, supra; In re Jassoy Co., supra. And see Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Royal Arcanum v. Green, 237 U. S. 531, 543, 35 Sup. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771.

[3] The decision of the Circuit Court of Appeals of the Second Circuit, in Courtney v. Georger, was made after full consideration of the question involved, including the Minnesota decisions. It was rendered upon the very concrete question involved here; it was between complainant and one of the defendants here, and became as to that defendant an adjudication. A petition for the review of that decision by certiorari was denied by the Supreme Court. 241 U. S. 660, 36 Sup. Ct. 448, 60 L. Ed. 1226. The case is peculiarly one for the application of the doctrine of comity. We are therefore of opinion that the bankruptcy court rightly held that the stockholder claimants were not liable to the bankrupt corporation, or to its trustee in bankruptcy, for the unpaid portions of their stock. The order affirming the allowance of the claims was therefore right, for claimants concededly loaned to the corporation the moneys for which the claims are made.

[4] If the trustee in bankruptcy had the right to collect present or future stock assessments, we should probably deem it our duty to make some provision, as was done in Kiskadden v. Steinle, for postponing payment of the claims in question. But neither the bankruptcy court nor the trustee can have anything to do with such collection; and there is no suggestion that claimants are not financially responsible. There thus seems no occasion for postponing the payment of appellees' claims, or for impounding any part of the funds distributable to creditors. It is conceded that appellees are not entitled to share in the moneys derived from the stock assessments.

The order of the District Court will be construed, in connection with the opinion, as so intended, and, as thus construed, is affirmed, with costs.